AGNES FULLER, Respondent, *v.* AARON M. DEDERICK, Appellant.

*Negligence — pedestrian struck by a wagon while crossing a street — what evidence is insufficient to show the absence of contributory negligence.*

In an action to recover damages for injuries occasioned to the plaintiff, who, while crossing a street, was struck by the forward wheel of the defendant's wagon and injured, the testimony of the plaintiff that, before attempting to cross, she looked both ways, seeing nothing in the street but an electric car over two blocks away, and, after crossing one of the tracks of the railroad, again looked both ways and saw nothing, and then, looking straight across in the direction in which she was going, proceeded to cross the second track, when a wagon struck her in the hip and knocked her down, is not sufficient to show the absence of contributory negligence on her part, where it appears that there was nothing to obstruct her view, and there is other evidence tending to show that she ran blindly into the side of the carriage and that the horse, which the plaintiff's witnesses testified was going at the rate of a mile in three minutes, was said by the occupants of the carriage to have been going at a slow rate, which latter testimony was corroborated by the fact that the horse was stopped almost immediately after the accident by a man stepping from the sidewalk and catching hold of its head.

APPEAL by the defendant, Aaron M. Dederick, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 26th day of April, 1898, upon the verdict of a jury for $1,500, and also from an order entered in said clerk's office on the 24th day of May, 1898, denying the defendant's motion for a new trial made upon the minutes.

The action was brought to recover damages for personal injuries sustained by the plaintiff in consequence of a collision with a horse and carriage owned by the defendant and driven by one of his servants.

*Zeb A. Dyer*, for the appellant.

*Isaac B. Barrett*, for the respondent.

HERRICK, J.:

To recover in this case, it was not only necessary for the plaintiff to show negligence on the part of the defendant's driver, but to show freedom from contributory negligence upon her own part. The accident happened near the intersection of Central avenue and Quail street in the city of Albany. Central avenue runs east and west and is intersected by Quail street running north and south.

The defendant's horse and carriage, in charge of a driver in his employ, who was accompanied by defendant's sister, was driving from the east towards the west. The plaintiff was on the south side of Central avenue, just west of Quail street; she started to cross to the north side of Central avenue; she says that, before she attempted to cross the street, she stood on the curb and looked both ways, and saw nothing in the street but an electric car, over two blocks away; that, after she got across one of the tracks of the surface railroad running through Central avenue, she again looked both ways and saw nothing; that she looked straight across where she was going, and says: " And when I got a few steps over the last track, something buzzed by me as quick as lightning, and struck me in my right hip and knocked me down." The time was between three and four o'clock in the afternoon of March 15, 1897; it was clear, and there appears to have been nothing in the street to obstruct her view. Some of the witnesses testified that they saw the horse and carriage at a distance of over 250 feet away before it struck the plaintiff, and it seems almost incredible that, if the plaintiff was exercising her faculties, she should not have seen the horse and carriage until it it struck her.

Some evidence was given tending to show that the horse was going at extraordinary speed, one of the plaintiff's witnesses testifying that it was going at the rate of a mile in three minutes. The testimony upon the part of the occupants of the carriage was that it was going at a slow rate. This seems to be corroborated by the fact that the horse was stopped almost immediately by a man stepping from the sidewalk and catching hold of its head. The witnesses upon the part of the plaintiff, who saw the accident, were on

the north side of Central avenue, the horse and buggy being between them and the plaintiff. They testified that she was struck with the forward wheel, knocked down, and run over by the hind wheel of the buggy; that she was not struck by the horse, but came in contact with the tire of the wheel, or the side of the wheel; one of them says, "I couldn't express how that was done; she wasn't in behind the horse; I don't know whether she could be struck by the tire of the wheel; she came in contact with the side of the wheel."

Another witness, after stating that she was struck by the forward wheel, in answer to a question of the court as to what part of the wheel struck the woman, said: "Well, I should judge the hub of the wagon struck the woman in the side of the hip," which answer was repeated upon his cross-examination.

Another witness, who testified to seeing the accident, said: "I saw the tire come up right against her clothes, strike her plain; I could see between the horse and wagon, there was a little space; I could see very plainly from where I stood; the front forward wheel struck her, and I thought the tire hit her as well as the wheel;" and again, "I think the front of the wheel touched her dress; I couldn't swear that it struck her bad, but I know it run against her dress; it went on until the hub reached her, and then she keeled over."

Upon the part of the defendant a witness, who stood on the south side of Central avenue with nothing between himself and the plaintiff and the horse and buggy, testified that he saw the plaintiff going across the street. "The lady got pretty near across when she walked right in the horse; that is, right into the wagon pretty near; her dress got caught, I guess, by the front wheel a little, and the man tried to stop the horse; he seen by the looks of it, he must have seen the lady, and the lady must have walked blindly right ahead." Again, "I watched the woman going across Central avenue, but could not tell whether she looked toward the horse; she walked straight across, and the horse had passed her before she struck the wagon; she walked across Central avenue from the south side to the north, and right against the wagon there, as far as I noticed; after she struck the wagon the horse didn't go at all; I think the man tried to stop before he met this woman; he did not entirely stop the horse before the woman struck the wagon, but nearly did so."

The driver of the horse states that he saw the plaintiff, and that

THIRD DEPARTMENT, NOVEMBER TERM, 1898.          [Vol 35.

she was crossing the street irregularly. " She started then kind of across Central avenue, then bore down, and I saw she was going to run into the horse ; her head was turned at the same time up Central avenue   *   *   *   and she wasn't looking at me, and I saw she was going to run into the horse, and I stopped still, and I saw then when I stopped she was going to run, I thought, right in front of the forward wheel, and I turned the horse so the horse's front feet were up on the sidewalk, and she run right into the side of the forward wheel."

The defendant's sister, who was an occupant of the wagon, says in regard to the plaintiff, " I saw her coming and the driver did, and he stopped the horse ; her course was uncertain, and when we saw she was coming directly towards us, he turned the horse a little to prevent her from running into the horse, and she ran into the wheel ; he turned the horse toward the curb." And, again, she stated, " I reached out my hand to keep her from coming against the wheel, but couldn't reach quite far enough to push her from the wheel."

My conclusion, after reading over all the testimony, is that the plaintiff blindly ran into the side of the wagon. Her manner of crossing the street is summed up in the statement of one of the plaintiff's witnesses, " The old lady was coming right across the street at the time she was struck ; she wasn't observing nobody when she was struck ; she was minding her own business, going right across that way."

It seems to me impossible that, if she had been using her eyes and ears, as a person should do in crossing a city street, she should not have seen this horse and wagon approaching, and that, if she had been so using her senses, she would have known of its approach before it struck her, as she insists, or before she ran into it, as the evidence seems to indicate. I am, therefore, of the opinion that, so far from showing the absence of contributory negligence, the evidence shows its presence, and that, therefore, the judgment and order should be reversed and a new trial granted, with costs to abide the event.

All concurred.

Judgment and order reversed, new trial granted, costs to abide the event.